FILED

2012 OCT -2  PM 2: 51

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1 | LEWIS N. LEVY, ESQ. (SBN 105975)
2 | DANIEL ROBERT BARTH (SBN 274009)
3 | **LEVY, FORD & WALLACH**
   | 3660 Wilshire Blvd., Suite 600
4 | Los Angeles, CA  90010
5 | Tel.  (213) 380-3140
   | Fax.  (213) 480-3284
6 | Email:  lnlevy@lsflaw.com
7 |         dbarth@lsflaw.com

8 | JENNIFER P. GARNER, ESQ.
9 | (*Application for Pro Hac Vice Status Pending*)
   | AMERICAN FEDERATION OF MUSICIANS
10 | OF THE UNITED STATES AND CANADA, AFL-CIO
11 | 1501  Broadway, Suite 600
   | New York, New York 10036
12 | Tel. (212) 869 1330 Ext. 290
13 | Fax. (212) 768-7452
14 | Email:  jgarner@afm.org

15 | Attorneys for Plaintiff American Federation of Musicians
16 |

17 | **UNITED STATES DISTRICT COURT**

18 | **CENTRAL DISTRICT OF CALIFORNIA**

19 | **LOS ANGELES DIVISION**

20 |

21 | **AMERICAN FEDERATION OF**
22 | **MUSICIANS OF THE UNITED STATES**
   | **AND CANADA, AFL-CIO, a labor**
23 | **organization,**

24 |

25 | **Plaintiff,**

26 | **vs.**

27 | **NBC UNIVERAL FOUNDATION,**
28 | **A California corporation, UNIVERSAL**

CASE NO. **CV 12 - 8450** - CBM
(FFMx)

**COMPLAINT FOR:**

1) BREACH OF LABOR
   AGREEMENT
   [29 U.S.C. . § 185];

2) DECLARATORY
   RELIEF

-1-

CITY STUDIOS, LLC,                      )   [28 U.S.C. § 2201];
a Delaware limited liability           )
company,  UNIVERSAL CITY               )   3)  INJUNCTION
STUDIOS PRODUCTIONS  LLLP,             )
a Delaware limited liability           )   [29 U.S.C. § 185; 28 U.S.C. §
limited partnership,                   )   2201]
TWENTIETH CENTURY FOX                  )
FILM CORPORATION, a Delaware           )
corporation, and FOX MUSIC,            )
INC., a Delaware corporation,          )
                                       )
        Defendants.                    )
                                       )

---------------------------------------------------

    Plaintiff AMERICAN FEDERATION OF MUSICIANS OF THE UNITED
STATES AND CANADA, AFL-CIO, alleges:

## I.

## JURISDICTION AND VENUE

    1.    This Court has original jurisdiction pursuant to Section 301(a) of the
Labor Management Relations Act (29 U.S.C. § 185), as this is a suit for violation of
a labor agreement.  An actual justiciable controversy exists among the parties, upon
which power is vested in this Court to render a declaratory judgment pursuant to 28
U.S.C. § 2201.

    2.    Venue is proper in the Central District of California pursuant to 29
U.S.C. § 185, as both parties reside and do business within this District, the labor
agreement upon which this action is based was breached within the geographical
boundaries of this District, and because Plaintiff's duly authorized officers and
agents are engaged in representing and acting for its employee members in this
District.

/ / /

/ / /

/ / /

## II.

## PARTIES

3.     Plaintiff American Federation of Musicians of the United States and Canada, AFL-CIO ("AFM"), is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(5).  The AFM is the representative agent for purposes of collective bargaining regarding the wages, hours and conditions of employment for professional musicians, including those engaged in Los Angeles County in the recording of phonorecords, motion picture underscores, music sound tracks for theatrical motion pictures and television films, and music for videotaped live television programs.  The AFM maintains its headquarters in New York, New York, and a principal office in Los Angeles, California.

4.     Defendant NBC Universal Foundation is a California corporation engaged in the global development, production, distribution and marketing of information and entertainment media.  Defendant NBC Universal Foundation maintains its principal place of business in Los Angeles County and is an employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(2).

5.     Defendant Universal City Studios LLC is a Delaware limited liability corporation authorized to do business in Los Angeles County, California. Defendant Universal City Studios LLC maintains a principal office in Los Angeles County and is an employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(2).

6.     Defendant Universal City Studios Productions LLLP is a Delaware limited liability limited partnership authorized to do business in Los Angeles County, California.  Defendant Universal City Studios Productions LLLP maintains a principal office in Los Angeles County and is an employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(2).

7.      Defendants NBC Universal Foundation, Universal City Studios LLC, and Universal City Studios Productions LLLP are affiliated owners and operators of a global portfolio of media and entertainment products, including television networks, television stations, a major motion picture company and amusement parks.  Defendants NBC Universal Foundation, Universal City Studios LLC, and Universal City Studios Productions LLLP are herein collectively referred to as "Universal."

8.      Defendant Twentieth Century Fox Film Corporation is a Delaware corporation authorized to do business in Los Angeles County, California. Defendant Twentieth Century Fox Film Corporation maintains a principal office in Los Angeles County and is an employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(2).

9.      Defendant Fox Music, Inc., is a Delaware corporation authorized to do business in Los Angeles County, California.  Defendant Fox Music, Inc., maintains a principal office in Los Angeles County and is an employer in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(2).

10.     Defendants Twentieth Century Fox Film Corporation and Fox Music, Inc., are affiliated entities engaged in the business of producing, licensing and distributing major motion pictures, television films and phonorecords.  Defendants Twentieth Century Fox Film Corporation and Fox Music, Inc., are herein collectively referred to as "Fox."

## III.

## STATEMENT OF FACTS

11.     Defendants Fox and Universal are parties to the AFM Basic Television Film Agreement (the "Agreement"), as amended by a Memorandum of Understanding dated March 1, 2010, covering the wages, terms and conditions of musicians whose services are rendered in connection with the production of television motion pictures and films.  A true and correct copy of the Agreement is

attached hereto as <u>Exhibit 1</u>.   A true and correct copy of the March 1, 2010 Memorandum of Understanding is attached hereto as <u>Exhibit 2</u>.

12.   Fox is the original producer of the comedy television film series *The Simpsons*.   Fox engaged the professional services of AFM musicians in the recording of music to accompany *The Simpsons* in accordance with and subject to the terms of the Agreement.

13.   Without notice to the AFM, Universal obtained recorded music sound track from *The Simpsons* for use in connection with a roller coaster attraction at its Universal Studios Theme Park in Hollywood (the "Park").   On information and belief, the AFM alleges such use includes the public performance, broadcast, transmission, or other exploitation of musical content from the series during the pre-show, in the queue lines, and/or as part of the ride itself, including to accompany new animation, all without authorization of the AFM.

14.   Article 8 of the Agreement governs new uses of music sound track recorded for a television film, and is expressly made applicable to any use whatsoever other than to accompany the film for which the music was originally prepared.   These extensive provisions include a broad restriction on new uses, specific new use exceptions, methods for calculating fees for particular categories of new uses, a notice and assumption of liability procedure for the licensing of content for certain new uses, and other rules.   Article 8 states in full detail as follows:

"(a)   The Producer agrees that all music sound track already recorded, or which will be recorded prior to the expiration of this Agreement, will not be used at any time for any purpose whatsoever except to accompany the picture for which the music sound track was originally prepared, with the following exceptions:

(1)   Recording hereunder for any picture which is part of a series of television motion pictures may be reused in scoring for any one or more other pictures of such series which are produced for broadcasting during the same broadcasting season for which said first picture was produced; it being understood, however, that no such recording may be reused in pictures of any other television program

series or in pictures of the same television program series produced for broadcasting during a subsequent broadcasting season. The term 'broadcasting season,' as used herein, refers to periods of not more than fifty-two (52) weeks and shall have the same meaning as that generally understood in the television industry. Recording hereunder for a so-called "pilot program" may be reused in other motion pictures in the series of which the pilot program becomes a part, but such reuse shall be limited to the first broadcasting season of such series.

(2)   Music recorded for any picture may be used for any trailers advertising the same picture and may be used for sales presentations and audience testings.

When a trailer is made before the picture is scored, the Producer may either: (i) use other music sound track previously scored under agreements with the Federation, provided prior advance notice is given to the Federation specifying the reasons for the use of such music sound track; or (ii) record the sound track for such trailer under the Federation's Television and Radio Commercial Announcements Agreement. The sound track scored for the picture may be substituted for use in the trailer.

(3)   Acetate copies of prescore recordings may be made for necessary rehearsing by artists, directors and/or for the edification of company executives only.

(4)   If any prescored musical numbers are, for any reasons, deleted from the picture for which they were designated and such deletion is done before the picture is released, the Producer shall have the right to re-register such work with the Federation Representative for a subsequent production; the intent of this being that the Producer shall have the right to use all prescored numbers in one released production.

(5)   Portions of the music sound track from a motion picture may be reused in accordance with the provisions of Article 8A hereof.

(b)   (1)   (i)   When sound track is dubbed for phonograph records or radio or television commercial announcements, Producer shall be responsible, or shall require its buyer, licensee or other authorized transferee ('Licensee') to become responsible, for: (A) the payment to

-6-

those musicians who rendered services in making the original sound track used of an amount equal to the scale wages provided in the then-effective Sound Recording Labor Agreement (previously known as the Phonograph Record Labor Agreement) or the Television and Radio Commercial Announcements Agreement, as applicable, plus pension contributions, or, in the case of musicians employed under the 'multi-tracking rates,' if the sound track is used in a phonograph record, the applicable payments in accordance with the provisions of Paragraph 15(a)(2)(iii) hereof (plus pension contributions); and (B) the other additional payments, if any, applicable to such phonograph record or commercial announcement use, as is provided in the then-effective Sound Recording Labor Agreement or Television and Radio Commercial Announcements Agreement, as applicable.

(ii)   Fifteen Percent (15%) Discount for Certain Soundtracks

The Producer or its Licensee is entitled to a fifteen percent (15%) discount from the applicable rates in subparagraph (b)(1)(i)(A) above for soundtrack records which: (i) use 45 minutes or more of music originally recorded for the motion picture; and (ii) utilize 80 or more musicians (excluding orchestrators and music preparation musicians) for whom payment is due under this Article 8(b)(1), provided that the following conditions are met:

(A)   The following logo or credit must be provided on the jacket or other packaging accompanying the record:

(1)   The AFM logo or credit to 'American Federation of Musicians.'

(2)   The instrumental musicians who performed on the largest recording session from which a cue is extracted for the soundtrack record must be credited by name and instrument (the largest session is the one utilizing the most musicians; if more than one has the identical 'largest' number, the Producer or its Licensee will identify from which session the credits will be determined).   Such musicians may be grouped by instrumental categories.

(3)   The   Leader/Conductor,   Orchestra Manager,   Orchestrator(s),   Librarian,   and   Music   Prep Service/Supervising Copyist must be credited by name and position.

(4)   Any inadvertent error or omission with regard to credits required under subparagraphs (b)(1)(ii)(A)(2) and (3) above will not be deemed a violation of this Article 8(b)(1)(ii) provided that the Producer or its Licensee has made a reasonable effort to comply with those provisions.

(B)   An 'organization name credit' that has been approved by the AFM must be placed on the front or back cover in a type size that is not less than fifty percent (50%) of the type size used for the composer credit unless no applicable organization name credit exists; provided that the entity that owns the organization name has agreed to hold harmless and indemnify the Producer and/or its Licensee from and against any action arising out of the authorized use of such organization names.

(C)   The Producer or its Licensee must provide the AFM with 75 copies of the commercially released soundtrack recording as soon as practicable upon its release.

(D)   If the Producer or its Licensee fails to satisfy any of the foregoing requirements, the special rates in this Article 8(b)(1)(ii) will not apply and the Producer or its Licensee will be required to make payment for the soundtrack record in accordance with Article 8(b)(1)(i).

(2)   The Producer shall be responsible for making the foregoing payments referred to in subparagraph (b)(1) above unless and until the Producer has provided the Federation with either: (i) evidence or an extract of the provision in the license agreement in which the Licensee has agreed to make those payments; or (ii) an assumption agreement under which the Licensee has assumed the obligation to make such payments.  (No proprietary information contained in the license agreement need be provided to the Federation.)  Upon giving notice to the Federation on or prior to the delivery to a Licensee who is a party signatory to the Sound Recording Labor Agreement or Television and Radio Commercial Announcements Agreement, as

applicable, of the necessary musical elements required to prepare a soundtrack album, Producer shall be relieved of further obligation under subparagraph (b)(2).

(3)    The assumption agreement referred to in subparagraph (b)(2) above shall be in the following form:

'The undersigned,  (insert name of buyer, licensee or other authorized transferee)  herein for convenience referred to as the "Buyer," hereby agrees with  (insert name of Producer  that  (identify title, length and identification number of each recording covered by agreement)   is subject to the AFM Basic Television Film Agreement of 2002 with respect to the provisions of Article 8(b) thereof which requires that, when sound track is dubbed for a phonograph record or a radio or commercial announcement, the following payments shall be made to all musicians who rendered services in making the original sound track: (i) scale wages (plus pension contributions) calculated in accordance with the then-effective Sound Recording Labor Agreement or Television and Radio Commercial Announcements Agreement, as applicable, except that payments to musicians employed under the 'multi-tracking' provisions of the AFM Basic Television Film Agreement shall be calculated in accordance with those provisions; and (ii) the other additional payments applicable to such phonograph record or radio or television commercial announcement use as set forth in the then-effective Sound Recording Labor Agreement or Television and Radio Commercial Announcements Agreement, as applicable, including but not limited to payments to the Sound Recording Special Payments Fund and the Music Performance Trust Funds.  Said Buyer hereby agrees, expressly for the benefit of such musicians, to make said payments required thereby.  It is expressly understood and agreed that the rights of Buyer to dub such music sound track for phonograph records or radio or television commercial announcements or to sell such phonograph records or radio or television commercial announcements containing such dubbed music sound track shall be subject to and conditioned upon payment to the musicians as provided in Article 8(b) of said Basic Agreement, and it is agreed that the Federation, the Sound Recording Special Payments Fund and the Music Performance Trust Funds ('the Funds'), as applicable, shall be entitled to seek injunctive relief and damages against Buyer in the event such payments are not made.

'Buyer shall be liable to make the payments described above but only based upon rights actually acquired by Buyer and only for the period it holds such rights.

'The undersigned agrees to keep or have access to complete records showing the number of phonograph records, tapes and other devices subject to payment under the provisions of this agreement which have been sold during the applicable reporting periods, the dates of initial release for sale thereof, the manufacturer's suggested retail price thereof and the component unites thereof, and the excise and sales taxes, if any, and the Federation and/or the Sound Recording Special Payments Fund and/or the Music Performance Trust Funds, as applicable, shall have the right at all reasonable times to inspect such records.  The undersigned shall give the Federation prompt written notice of the date on which the phonograph record containing such dubbed music sound track covered hereby is first released for sale.  An inadvertent failure to comply with said requirement of notice shall not constitute a default by the undersigned hereunder, provided such failure is cured promptly after notice thereof from the Federation.

'Buyer further agrees that in the event of a sale, transfer, license or assignment of the right to dub sound track from the motion picture for phonograph records, Buyer shall obtain from the purchaser, transferee, licensee or assignee an Assumption Agreement covering the rights disposed of in the form set forth herein and shall provide an executed copy of such Assumption Agreement to the Federation.  Upon delivery of such Assumption Agreement, Buyer shall not be further liable to the Federation or the Funds for the keeping of any records related to or the payments required based upon the rights covered under the Assumption Agreement and the Federation and the Funds agree to look exclusively to the purchaser, transferee, licensee or assignee executing such Assumption Agreement for compliance with the provisions of Article 8(b)(1).   In the event Buyer fails to deliver such Assumption Agreement, it shall continue to be liable for the payments required under Article 8(b)(1).'

It is understood that additional provisions may be included in form Assumption Agreements, so long as such additional provision(s) do not vary or alter the terms of the foregoing Assumption Agreement.

Producer agrees to give notice to the Federation within thirty (30) days of each sale, transfer or license of such dubbing rights, with the name and address of the Buyer or assignee, and to deliver to the Federation an executed copy of each assumption agreement entered into by the Producer. An inadvertent failure on the part of the Producer to comply with any of the provisions of this subparagraph (b) shall in no event constitute a default by the Producer hereunder or a breach of this Agreement, provided that such failure is cured promptly after notice thereof from the Federation.

Upon delivery of such assumption agreement, Producer, or any subsequent owner obtaining the execution of such an assumption agreement, shall not be further liable to the Federation or to the Funds for the keeping of any such records or the payments required hereunder insofar as they relate to the dubbing of music sound track for phonograph records, and the Federation and the Funds agree to look exclusively to the party last executing such an assumption agreement for the keeping of such records and compliance with payment obligations.

(c)   The Producer further agrees to register identification of picture and music sound track with the Federation Representative.

(d)   It is agreed that persons employed under this Agreement shall not be required or permitted to record music sound track for general usage or for any purpose whatsoever except as provided herein.

(e)   It is agreed that persons employed under this Agreement will not be required or permitted to use music sound track for any purpose in violation of the terms herein provided.

(f)   The Producer is not restricted from continuing the established industry practice of exchanging so-called 'stock shots.'

(g)   No orchestra or part thereof shall be permitted to augment music recordings in the same session in which the original recordings are made. The above is not intended to prohibit the Producer from making musical bridges, replacements or other special musical effects for the purpose of musical punctuation, matching a picture action or other

-11-

special effects, such as reverberation where the tracks are staggered several sprocket holes or frames to give sound effects not obtainable with more musicians.  It shall not be the intention of the Producer to program a recording call  specifically for augmenting music tracks as a means of eliminating musicians.

(h)   The sound track of television motion pictures shall be governed by the sound track regulations set forth in this Article 8, except as modified by the provisions of Paragraph 15(a) of the 'WAGE SCALES, HOURS OF EMPLOYMENT AND WORKING CONDITIONS,' attached hereto.

(i)   The Producer agrees that the substance and intent of Article 8 hereof shall be incorporated in all agreements made by the Producer for licensing, leasing, lending, giving, selling, utilizing or other disposition of music sound track containing the recorded music made by members of the Federation, or scenes or shots containing pictures of members of the Federation performing on musical instruments or conducting."

15.   Article 8A of the Agreement limits the permissible reuses of any portion of the music sound track of a motion picture without additional compensation to four specifically defined circumstances, and imposes payment obligations for other reuses of a motion picture sound track or production number. Article 8A states in full detail as follows:

"Notwithstanding anything to the contrary in Article 8 and except as provided in subparagraph (e) below, no additional compensation shall be payable for the reuse of any portion of the music sound track of a motion picture in the following circumstances:

(a)   When used for promotional, trailer, news or review purposes.  For purposes of this subparagraph, a "promotional" use shall be for the purpose of advertising or publicizing the specific motion picture or serial or series from which the sound track is taken (including the filming of musicians engaged in the recording of such sound track).   The term "promotional," as used herein, shall also

include "the making of…" or "behind-the-scenes"-type programs. As used in this subparagraph (a), the term "news" means regularly-scheduled news programs and special news programs which are not pre-planned and which are broadcast within twenty-four (24) hours after the event which gave rise to the program. It is understood that obituary programs are deemed to be "special news programs" even if pre-planned.

Upon learning of any unauthorized use of either "the making of…" or "behind-the-scenes"-type promotional programs, the parties will jointly discuss appropriate steps to be taken to collect monies for such unauthorized use.

(b)    When used as a so-called "stock shot," as that term is customarily understood in the industry – (*i.e.*, shots excluding dialogue or identifiable characters).

(c)    When used for purposes of recapping the story to date in the context of a serial, multi-part program, episodic series, unit series or anthology.

(d)    When used as a flashback in a context of a serial, multi-part program, episodic series, unit series, one-time show or anthology, except that this shall not apply to programs comprised primarily of flashbacks.

(e)    (1)    For any use of any portion of a production number with the accompanying footage from a motion picture, or for the use of up to two (2) minutes of music sound track from a motion picture without the accompanying footage, which use is not within the exceptions provided for in subparagraphs (a)-(d) above, the Producer shall pay the following aggregate one-time-only sum for each motion picture to the musician or musicians determined by the Federation to be entitled to such compensation and prorated among such musicians as determined by the Federation:

(i)    one (1) minute or less of sound track - $1,500;

(ii)    for each thirty (30) seconds or portion thereof in excess of one (1) minute - $750.

(2)    For the use of any other music sound track with the accompanying footage from a motion picture not covered under subparagraph (e)(1) above, which use is not within the exceptions provided for in subparagraphs (a)-(d) above, the Producer shall pay the following aggregate one-time-only sum for each motion picture to the musician or musicians determined by the Federation to be entitled to such compensation and prorated among such musicians as determined by the Federation:

(i)    one (1) minute or less of sound track - $750;

(ii)    for each thirty (30) seconds or portion thereof in excess of one (1) minute - $375.

(f)    The provisions of this Article apply to the uses specified above after February 15, 2002 of a portion of the music sound track from a motion picture recorded under this Agreement or any predecessor Agreement thereto; provided, however, no payment shall be required hereunder for the use of any portion of the music sound track from a motion picture if the collective bargaining agreement under which such music was recorded contained no restrictions on the reuse of such sound track or if such collective bargaining agreement permitted the reuse of such material without additional compensation.

(g)    The actual production company which produces the program or motion picture containing the excerpted portion of the music sound track requiring payment is obligated to make the payment required under this Article, provided the company is signatory to this Agreement.    The Producer shall otherwise remain liable for the payment due.

16.    Universal's use of music sound track from *The Simpsons* at its Park does not fall within any of the new use exceptions enumerated in Article 8 of the Agreement and, thus, is not an authorized new use under the Agreement.

17.     Universal contends, and the AFM denies, that Universal's use of the sound track is a "promotional" reuse permissible without additional compensation as provided in Article 8A, subparagraph (a), of the Agreement.  The AFM alleges that Universal's use of the sound track is a completely new use for purposes other than to accompany the film for which the music was originally prepared, and which is not authorized by this Agreement or any other understanding.

18.     Fox contends, and the AFM does not have any basis to dispute, that Fox transferred some or all of its intellectual property rights in *The Simpsons* to Universal.

19.     Article 13 of the Agreement provides:

> "This Agreement shall be binding upon the Producer, upon its successors, and shall be applicable to any company in which Producer has a twenty-five percent (25%) or more financial interest, engaged in the production of television motion pictures, provided such company at such time does not have a collective bargaining agreement or agreements covering the employee classifications subject to this Agreement."

## IV.

## FIRST CLAIM FOR RELIEF

### (Breach of Labor Agreement actionable under 29 U.S.C. § 185)

20.     The Plaintiff AFM incorporates and realleges each and every allegation in paragraphs 1 through 19 as if restated and realleged here in full.

21.     Defendants Universal and Fox are individually, jointly and severally liable for breach of Article 8 of the AFM Television Film Agreement arising as a result of the unauthorized use of recorded music sound track from *The Simpsons* television film series in connection with an attraction at Universal's Hollywood Park.

22.     As a result of the Defendants' breach of the Agreement, Plaintiff has suffered a loss of its contractual rights and harm to its collective bargaining rights. As a further result of the Defendants' breach, Plaintiff's members have suffered

1  economic damages and damage to their contractual rights and collective bargaining
2  rights.

3                                    V.

4                  **SECOND CLAIM FOR RELIEF**

5          **(Declaratory Relief pursuant to 28 U.S.C. § 2201)**

6          23.    The Plaintiff AFM incorporates and realleges each and every allegation
7  in paragraphs 1 through 22 as if restated and realleged here in full.

8          24.    An actual, present and justiciable controversy exists between the AFM
9  and Universal regarding the parties' respective rights and responsibilities under the
10 Agreement.    Universal alleges that its use of music from *The Simpsons* is
11 "promotional" in nature and, thus, is a reuse that is permissible without additional
12 compensation in accordance with Article 8A.   The AFM denies that this use is
13 "promotional," and alleges that the use of the music is an entirely new use that does
14 not fall within any of the exceptions defined in Article 8 and, thus, is unauthorized.

15         25.    Declaratory relief is necessary and appropriate so that the parties may
16 know the rights, obligations and other legal relations that will govern their future
17 conduct under the Agreement.   The AFM seeks a determination that the use of
18 recorded music sound track from *The Simpsons* television film series at Universal's
19 Hollywood Park is a new use that is not authorized by the Agreement, and is not a
20 "promotional" reuse as such term is used in the Agreement.

21                                   VI.

22                  **THIRD CLAIM FOR RELIEF**

23                           **(Injunction)**

24         26.    The Plaintiff AFM incorporates and realleges each and every allegation
25 in paragraphs 1 through 25 as if restated and realleged here in full.

26         27.    Defendant Universal will continue to breach the Agreement unless
27 enjoined by an Order from this Court.   Thus, the AFM seeks injunctive relief
28 enjoining Universal from publicly performing, broadcasting, transmitting,
   exhibiting, or otherwise exploiting music recorded under the Agreement to

accompany *The Simpsons* television series at its Universal Studios Hollywood Theme Park, unless expressly authorized by the AFM.

VII.

**ARBITRATION PROCEDURE UNAVAILABLE**

28.     The Plaintiff AFM incorporates and realleges each and every allegation in paragraphs 1 through 27 as if restated and realleged here in full.

29.     The Agreement contains no grievance and arbitration procedure or other alternative means of resolving disputes.   Thus, the AFM is presenting the matter for judicial determination by this District Court.

VIII.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff AFM prays for judgment in its favor and against the Defendants NBC Universal Foundation, Universal City Studios, LLC, Universal City Studios Productions LLLP, Twentieth Century Fox Film Corporation, and Fox Music, Inc., and the entry of an award as follows:

a)      for a determination that Fox and Universal are individually, jointly and severally liable for breach of contract arising from the unauthorized use of music sound track recorded under the AFM Basic Television Film Agreement;

b)      for economic damages to the musicians employed in the recording of music for *The Simpsons* television film series in an amount to be determined at trial;

c)      for a declaration of the parties' rights and other legal relations under the Agreement, including a declaration that the use of music sound track recorded for *The Simpsons* television film series in connection with an attraction at Universal's Hollywood Park is a use that is not authorized by the Agreement;

d)      an injunction barring Universal from further public performance, broadcast, transmission, exhibition or other exploitation of music recorded for *The Simpsons* television series unless expressly authorized by the AFM;

e)      reasonable attorneys' fees, costs of suit, and interest;

f)      such other and further relief as the Court may deem just and proper.

Dated:  October 1, 2012                    Respectfully Submitted,
                                           LEVY FORD & WALLACH

                                           By: */s/   Lewis  N. Levy*
                                           LEWIS N. LEVY, Esq.
                                           DANIEL R. BARTH, Esq

                                           and

                                           AMERICAN FEDERATION OF
                                           MUSICIANS

                                           By: */s/Jennifer P. Garner*
                                               JENNIFER P. GARNER
                                               (Admission *pro hac vice* pending)

                                           *Attorneys for the Plaintiff*
                                           AMERICAN FEDERATION OF
                                           MUSICIANS    OF THE UNITED
                                           STATES AND CANADA